Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIKHADAR JAMA, an individual,
ANEB ABDINOR HIREY, an individual,
ROGIYA DIGALE, an individual,
ABDISALAM MOHAMED, an individual,
JASHIR GREWAL, an individual, UDHAM
SINGH, an individual, SUKDEV SINGH
BASRA, an individual, KHALIF
MAHAMAD, an individual, JAMA DIRIA,
an individual, AHMED F. GELLE, an
individual, and LUL SALAD, an individual,

                   Plaintiffs,

     v.

GCA SERVICES GROUP, INC., a foreign
corporation, and AVIS BUDGET GROUP,
INC., a foreign corporation, and AVIS
RENT A CAR SYSTEM LLC, a foreign
limited liability company,
,

                   Defendants.

No.: 2:16-cv-00331-RSL

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

 Note for Motion Calendar:
JUNE 9, 2017

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................................1

II.     STATEMENT OF FACTS ..............................................................................................2

    A.   Avis is a leading provider of vehicle rental services .......................................2
    B.   GCA is a leading national services provider.....................................................2
    C.   GCA's car shuttling services in the Seattle area ..............................................2
    D.   The Plaintiffs' employment with GCA...............................................................3
    E.   The City of SeaTac ordinance............................................................................3
    F.   The termination of the GCA contract.................................................................4
    G.   SeaTac minimum wage claims by GCA employees...........................................4

III.    MOTION TO STRIKE ....................................................................................................9

IV.     ARGUMENT AND AUTHORITY ..............................................................................12

    A.   Plaintiffs cannot establish Article III standing.................................................12
    B.   Plaintiffs cannot establish the prerequisites for class certification .................12
    C.   Plaintiffs are not adequate representatives under Rule 23(a)(4).....................13
    D.   Plaintiffs' counsel are not adequate under Rule 23(a)(4) ...............................16
    E.   Plaintiffs fail to establish typicality under Rule 23(a)(3)................................17
    F.   Plaintiffs' class definition is deficient and seeks an impermissible "failsafe" class..................................................................................................................18
    G.   Plaintiffs fail to establish numerosity under Rule 23(a)(1)............................19
    H.   Plaintiffs fail to establish commonality and predominance.............................19
    I.   Plaintiffs fail to establish that a class action is manageable and superior .......23
    J.   Plaintiffs' arguments under Rule 23(b)(2) are meritless.................................24

V.      REQUEST FOR ATTORNEYS' FEES ......................................................................24

VI.     CONCLUSION...............................................................................................................24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - i
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amazon.com v. Lay*,
5
    758 F.Supp.2d 1154 (W.D.Wash. 2010)................................................................5

6

*B.K.B. v. Maui Police Dept.*,
    276 F.3d 1091 (9th Cir. 2002) .......................................................................24
7

*Ballan v. Upjohn Co.*,
8
    159 F.R.D. 473 (W.D.Mich. 1994)..............................................................16

9

*Bates v. United Parcel Service, Inc.*,
10
    511 F.3d 974 (9th Cir. 2007) .......................................................................12

11

*Becerra v. Expert Janitorial, LLC*,
    181 Wn.2d 186, 332 P.3d 415 (2014).....................................................20, 22
12

*Beck v. Maximus, Inc.*,
13
    457 F.3d 291 (3d Cir. 2006)........................................................................18

14

*Berger v. Compaq Computer Corp.*,
15
    257 F.3d 475 (5th Cir. 2001) .......................................................................13

16

*Better v. YRC Worldwide Inc.*,
    2016 WL 1056972 (D.Kan. 2016) ...............................................................16
17

*Blankner v. City of Chicago*,
18
    504 F.2d 1037 (7th Cir. 1974) .....................................................................17

19

*Bohn v. Pharmavite, LLC*,
20
    2013 WL 4517895 (C.D. Cal. 2013)............................................................15

21

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .....................................................................18
22

*Brown v. Fed. Ex. Corp.*,
23
    249 F.R.D. 580 (C.D.Cal. 2008)..................................................................24

24

*Buckland v. Maxim Healthcare Servs.*,
    Inc., 2012 WL 3705263 (C.D.Cal. 2012) ....................................................16
25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - ii
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*In re Cabral*,
   2012 WL 8441317 (E.D.Cal. 2012) ....................................................................11

*In re Coordinated Pretrial Proceedings*,
   109 F.3d 602 (9th Cir. 1997) ..........................................................................22

*Darvin v. Int'l Harvester Co.*,
   610 F.Supp. 255 (S.D.N.Y. 1985) ....................................................................16

*David v. Bankers Life & Cas. Co.*,
   2015 WL 3994975 (W.D.Wash. 2015) ..............................................................22

*David v. Bankers Life & Cas. Co.*,
   2016 WL 2610246 (W.D.Wash. 2016) ..........................................................20, 22

*Davidson v. Citizens Gas & Coke Util.*,
   238 F.R.D. 225 (S.D. Ind. 2006) ..................................................................15, 16

*Echavarria v. Williams Sonoma, Inc.*,
   2016 WL 1047225 (D.N.J 2016) ......................................................................21

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ......................................................................12, 24

*Erickson v. Elliot Bay Adjustment Co., Inc.*,
   2017 WL 1179435 (W.D.Wash. 2017) ..............................................................18

*Fendler v. Westgate-California Corp.*,
   527 F.2d 1168 (9th Cir.1975) ..........................................................................16

*Fleming v. Parnell*,
   2013 WL 4511494 (W.D.Wash. 2013) ................................................................5

*FMC Tech., Inc. v. Edwards*,
   420 F.Supp.2d 1153 (W.D.Wash. 2006) .............................................................5

*Fonseca v. Hall*,
   568 F.Supp.2d 1110 (C.D.Cal. 2008) ................................................................10

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
   170 F.R.D. 150 (S.D.N.Y. 2010) ......................................................................15

*Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*,
   2015 WL 9487928 (W.D.Wash. 2015) ..............................................................24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - iii
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Hadjavi v. CVS Pharm., Inc.*,
    2011 WL 3240763 (C.D.Cal. 2011)...................................................................................14

*Hughes v. Winco Foods*,
    2012 WL 34483 (C.D.Cal. 2012)..............................................................................14, 24

*Z.D. ex rel. J.D. v. Group Health Co-op.*,
    2012 WL 1977962 (W.D.Wash. 2012)..........................................................................19

*J.T. v. Regence BlueShield*,
    291 F.R.D. 601 (W.D.Wash. 2013) ...............................................................................12

*Jack v. Trans World Airlines, Inc.*,
    854 F. Supp. 654 (N.D. Cal. 1994) ...............................................................................10

*Jimenez v. Domino's Pizza, Inc.*,
    238 F.R.D. 241 (C.D.Cal. 2006).....................................................................................23

*Jovel v. Boiron, Inc.*,
    2014 WL 1027874 (C.D.Cal. 2014)..........................................................................14, 15

*Kandel v. Brother Intern. Corp.*,
    264 F.R.D. 630 (C.D.Cal. 2010).....................................................................................16

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D.Ill. 1990)........................................................................15, 16, 17

*Kirkpatrick v. Ironwood Communications, Inc.*,
    2006 WL 2381797 (W.D.Wash. 2006)..........................................................................23

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) .......................................................................................15

*Kuang v. Bel-Air Mart*,
    205 F. Supp. 3d 1155 (E.D.Cal. 2016)...........................................................................10

*Lanzarone v. Guardsmark Holdings, Inc.*,
    2006 WL 4393465 (C.D.Cal. 2006)................................................................................23

*Lith v. Iheartmedia*
    *+ Entertainment, Inc.*, 2016 WL 4000356 (E.D.Cal. 2016) ........................................19

*Maddock v. KB Homes, Inc.*,
    248 F.R.D. 229 (C.D.Cal. 2007)......................................................................................21

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - iv
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........................................................................12

*Miranda v. Sweet Dixie Melon Co.*,
2009 WL 1324847 (M.D.Ga. 2009).................................................................11

*Motty v. First Student, Inc.*,
2016 WL 4498452 (C.D.Cal. 2016)..................................................................16

*O'Dell v. Conseco Senior Health Ins. Co.*,
2011 WL 13044240 (W.D.Wash. 2011)................................................13, 17, 23

*Ogden v. AmeriCredit Corp.*,
225 F.R.D. 529 (N.D. Tex. 2005) .....................................................................16

*Ouedraogo v. A-1 Intern. Courier Serv., Inc.*,
2014 WL 4652549 (S.D.N.Y. 2014)..................................................................21

*Pattillo v. Schlesigner*,
625 F.2d 262 (9th Cir. 1980) ............................................................................23

*Savannah Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D.Cal. 2016)..............................................................18, 19

*Savino v. Computer Credit, Inc.*,
173 F.R.D. 346 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998) ...........15

*Schneider v. Ecolab, Inc.*,
2016 WL 7840218 (N.D.Ill. 2016) ...................................................................17

*Searcy v. eFunds Corp.*,
2010 WL 1337684 (N.D.Ill. 2010) ...................................................................15

*Shiring v. Tier Tech., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .......................................................................15

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
2010 WL 4590766 (C.D.Cal. 2000)..................................................................11

*Taub v. Glickman*,
14 Fed.R.Serv. 847 (S.D.N.Y. 1970) ...............................................................17

*Taylor v. Universal Auto Group I, Inc.*,
2014 WL 6654270 (W.D.Wash. 2014).........................................................18, 19

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - v
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Thompson v. Jiffy Lube Int'l, Inc.*,
    250 F.R.D. 607 (D.Kan. 2008)......................................................................................17

*Wagner v. Lehman Bros. Kuhn Loeb Inc.*,
    646 F.Supp. 643(N.D.Ill. 1986) ...................................................................................15

*Wagner v. Taylor*,
    836 F.2d 578 (D.D.C. 1987) .........................................................................................14

*Wal-Mart Stores v. Dukes*,
    131 S.Ct. 2541 (2011) ...................................................................................................12

*Weisman v. Darneille*,
    25 F.R.D 669 (S.D.N.Y. 1978) ....................................................................................16

*Xavier v. Belfor USA Group, Inc.*,
    2008 WL 4862533 (E.D.La. 2008) ..........................................................................10, 11

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*,
    530 F.2d 508 (3d Cir. 1976)..........................................................................................17

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ......................................................................................23

**Statutes**

28 U.S.C. § 1746..................................................................................................................10

28 U.S.C. § 1927..................................................................................................................24

**Other Authorities**

Fed. R. Civ. Proc. 11 ................................................................................................1, 5, 16, 24

Fed. R. Civ. Proc. 23 ....................................................................................................12, 23

Fed. R. Civ. Proc. 23(a) ..................................................................................................1, 12

Fed. R. Civ. Proc. 23(a)(1)...................................................................................................19

Fed. R. Civ. Proc. 23(a)(2)...................................................................................................19

Fed. R. Civ. Proc. 23(a)(3)...................................................................................................17

Fed. R. Civ. Proc. 23(a)(4)......................................................................................12, 13, 16

Fed. R. Civ. Proc. 23(b) .......................................................................................................12

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   Fed. R. Civ. Proc. 23(b)(2) ..................................................................................1, 24

2   Fed. R. Civ. Proc. 23(b)(3) ..........................................................................1, 20, 23

3   Restatement of Restitution § 107(1) (1937).............................................................22

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - vii
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# I. INTRODUCTION

Plaintiffs were employees of Defendant GCA Services ("GCA"). After this Court dismissed their SeaTac minimum wage claims against GCA, Dkt 24, Plaintiffs filed a First Amended Complaint ("FAC") against GCA and defendants Avis Budget Group, Inc. ("ABG") and Avis Rent A Car System LLC ("ARACS"), Dkt 34. As detailed herein, the FAC reflects no investigation of the facts and a blatant disregard for counsel's obligations under Rule 11. Plaintiffs recently agreed to a stipulated dismissal of GCA to avoid some of those issues, Dkt 53, but nevertheless forged ahead against Avis, filing an unjustified Motion for Class Certification (the "Motion"), Dkt 41.

The Motion fails on every front. Initially, Plaintiffs have no standing because ABG and ARACS did not contract with GCA and had no employees at the Seattle-Tacoma International Airport (the "Airport"). Moreover, Plaintiffs have not satisfied Rule 23(a):

- Plaintiffs and their counsel are not adequate and lack the honesty, awareness, and diligence required of class representatives and counsel (as evidenced by their execution and submission of declarations filled with admittedly false statements);

- Plaintiffs are not typical of the putative class and are subject to unique defenses;

- Plaintiffs' proposed class is improperly defined and lacks numerosity; and

- Plaintiffs have failed to establish that there are disputed legal questions in this case that can be resolved with common answers.

In addition, Plaintiffs' request for certification under Rule 23(b)(2) is frivolous (they are seeking damages and there is no possible ongoing violation), and their request under Rule 23(b)(3) fails because individual issues predominate and a class action is neither manageable nor superior (as evidenced by the fact that 93 GCA employees elected not to participate in this case and, instead, filed wage claims with the Washington State Department of Labor and Industries ("DLI")).

Put simply, Plaintiffs have failed to meet their burden of proving that class certification is warranted in this case, and certification should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 1
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## II.  STATEMENT OF FACTS

**A.      Avis is a leading provider of vehicle rental services**

The FAC admits: Avis is a global leader in the car rental business, with extensive operations in many countries. Dkt 34 at 4. Two relevant aspects of Avis's business are: (1) Avis Budget Car Rental, LLC ("ABCR") and its affiliates own the "Avis," "Budget," "Payless" and "Zipcar" tradenames and provide (or enter into contracts with licensees to provide) services in specific locations; and (2) ABCR and its affiliates or licensees focus on the car rental business and often contract with others to provide support services that allow them to maintain that focus. Manalio ¶3.[1]

**B.      GCA is a leading national services provider**

GCA is a large corporate entity, has over 37,000 employees (more than ABG), operates in 46 states, and provides services in at least ten industry sectors (including the rental car market). Dkt 4; Dkt 34 at 3. Of relevance here, GCA provides car shuttling services for various rental car companies throughout the United States. Fisher ¶2.

**C.      GCA's car shuttling services in the Seattle area**

In the Seattle area, GCA has provided shuttling services for a number of rental car companies (including non-Avis companies Sixt and Hertz). *Id.* ¶3. In 2009, GCA entered into a master agreement with ABCR establishing general terms for shuttling services throughout the United States and, in 2010, GCA and ABCR entered into an agreement covering the Seattle area. *Id.* ¶4; Dkt 13, Ex. A. As Plaintiffs have admitted, that agreement provided that GCA would "manage and operate the on-airport shuttling and off-airport shuttling duties for ABCR (Avis Budget Car Rental) to meet the required shuttling Services in the Seattle, Washington area," and that GCA was "responsible for managing and allocating [its] employees to address ABCR's shuttling Services requirements which will fluctuate during peak/non-peak times/seasons." Dkt 16 at 4; Dkt 13, Ex. A. As this Court held: "GCA Services had a contract with Avis Budget Car Rental, LLC, to transport Avis' rental cars

---

[1] Defendants' supporting materials are attached as exhibits to the Declaration of Daniel Hurley. Basic materials are cited as "Hurley" [¶ or Ex #]; Avis declarations are cited as "Declarant Last Name" [¶ or Ex #]; and deposition transcripts are cited as "Deponent Last Name" [page:line or Ex #].

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 2
NO.: 2:16-CV-00331-RSL

1    between and among Avis' various Seattle-area locations, including the Airport rental facility, the

2    Tukwila service facility, local rental facilities, and Zip Car locations." Dkt 24 at 1-2. The agreement

3    also provided that GCA employees were not employees of ABCR and that GCA would comply with

4    all legal requirements for its employees. Fisher ¶5; Dkt 13, Ex. A.  Indeed, after its employees voted

5    to unionize, GCA entered into a collective bargaining agreement ("CBA") with Teamsters Local 117

6    that detailed the terms and conditions of employment for GCA employees. Fisher ¶6, Ex.A.

7    **D.    The Plaintiffs' employment with GCA**

8           There is no doubt that Plaintiffs were employed by GCA.[2] Plaintiffs admit they submitted job

9    applications to GCA, were sent to drug testing by GCA, received offer letters from GCA, were hired

10   by GCA, went through orientation with GCA, filled out extensive paperwork for GCA, had to follow

11   GCA behavioral and safety policies, were trained by GCA, wore identification badges and an outer

12   layer with the "GCA" name, had formal observations completed by GCA, had to report absences to

13   GCA, received written discipline from GCA, and were terminated by GCA.[3] They did none of these

14   things with ABCR. *E.g.*, Mahamed 21:24-25. Plaintiffs testified they regularly received directions

15   from GCA supervisors and leads, but some Plaintiffs also claimed varying degrees of direction from

16   ABCR managers. *Compare* Dkt 46 ¶6 (directed "frequently") *with* Digale 35:19-21 ("Avis will talk

17   to the supervisor and then the supervisor will talk to the lead and then the lead will talk to us").

18   **E.    The City of SeaTac ordinance**

19          Pursuant to a voter initiative, the SeaTac ordinance set a minimum wage of $15 per hour for

20   certain targeted employees starting on January 1, 2014. Dkt 24 at 1. Under the ABCR contract, GCA

21   had some employees who performed shuttling services at the Airport, which is in the City of SeaTac,

22   and other employees who performed shuttling services outside SeaTac. Fisher ¶7-8; Diaz ¶17-22.

23

24   [2] Dkts 44-51 (paragraph 2 in each declaration).
     [3] *E.g.*, Hirey 54:15-25, Ex.2 (application); 59:4-60:22, Exs.4, 5 (drug testing); 61:20-62:15, Ex.6 (offer); 56:6-9 (hired);
     61:3-7 (paperwork/orientation), 78:2-8 (training), 62:23-63:10 (ID badge and outer layer), 63:12-64:24, Exs.8, 9

25   (behavioral and safety policies), 84:13-86:21, Exs. 14-16 (observations), 86:23-88:6 (absence reporting), 91:3-21
     (discipline), 32:21-33:7 (termination).

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 3
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   Although the contract generally distinguished between on-airport (*i.e.*, in SeaTac) and off-airport

2   (*i.e.*, outside SeaTac) work, GCA at times used off-airport and on-airport employees interchangeably

3   and did not keep clear records where GCA employees worked each hour or day. Fisher ¶7-8.

4          Regardless, on January 1, 2014, GCA did not increase the minimum pay provided to its

5   employees to comply with the SeaTac ordinance because GCA believed (and this Court later held)

6   that it is not subject to the ordinance. Dkt 24; Fisher ¶9.

7   **F.     The termination of the GCA contract**

8          Although ABCR and GCA negotiated a new country-wide master agreement that took effect

9   in January 2016, the parties were unable to reach agreement on new terms applicable to the shuttling

10  work in the Seattle area. Manalio ¶8.  Accordingly, ABCR notified GCA that it was terminating their

11  existing relationship with regard to services in the Seattle area, effective March 31, 2016. *Id*. ABCR

12  entered into a contract with another large service provider called FleetLogix, which had prior

13  shuttling experience with other rental car companies. *Id.* The FleetLogix contract is distinct from the

14  GCA contract in that it differentiates between Seattle on-airport and off-airport shuttling work. *Id*.

15  The contract requires FleetLogix to keep the on-airport work distinct; covers work in the Seattle area

16  (including SeaTac), Bellingham, and Spokane; and provides distinct rates for different areas. *Id.*

17  Former GCA employees who were interested in working for FleetLogix after their work with GCA

18  ended were required to apply for employment with that entity.  *E.g.*, Digale 48:12-49:10; Mohamed

19  59:2-13. FleetLogix hired many, but not all, GCA employees. Mahamed 59:9-21. Since April 1,

20  2016, FleetLogix has paid its employees who do shuttling work at the Airport at or above the SeaTac

21  minimum wage rate for all hours they work in the City of SeaTac. Gelle 65:12-14.

22  **G.     SeaTac minimum wage claims by GCA employees**

23         Plaintiffs brought claims against GCA alleging violation of the SeaTac minimum wage

24  ordinance. Dkt 1-1 at 4-13. This Court granted summary judgment for GCA, holding that it was not

25  a "Transportation Employer" and was not covered by the ordinance. Dkt 24. After Plaintiffs moved

26  for reconsideration and leave to add a required party, Dkt 27, this Court authorized them to file an

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 4
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    amended complaint against ABCR if they could allege that it was their employer "consistent with

2    their Rule 11 obligations." Dkt 32 at 2. Plaintiffs filed the FAC against GCA, ABG, and ARACS,

3    but did not name ABCR as a defendant. Dkt 34. ABG and ARACS have no employees at the Airport

4    and are not signatories to the GCA-ABCR contracts (facts that Plaintiffs' counsel knew from a

5    separate class action against Avis). Hurley ¶15, Exs. M, N, O (Notice of Removal at 1 n.1; Answer

6    at 1 n.1; and Stipulated Motion to File Amended Complaint, Ex. A in Case No. 2:16-cv-00421-

7    RSL).

8           Plaintiffs conferred with other GCA employees regarding the lawsuit. *E.g.*, Digale 59:12-

9    62:3; Hirey 96:21-98:15. Plaintiffs testified that some employees chose to proceed with legal counsel

10   in this lawsuit (the Plaintiffs here) and other employees chose to pursue claims with DLI. *Id.* Indeed,

11   DLI is in the midst of investigating the claims of 93 GCA employees.[4] Fisher ¶10, Ex.B.

12          Despite having no evidence of contact (let alone a joint employment relationship) with ABG

13   or ARACS, Plaintiffs' counsel filed the Motion and supported it with declarations from eight of the

14   Plaintiffs. Dkts 44-51. Avis deposed seven[5] of the eight declarants and discovered as a general

15   matter that the declarants could not read the documents in English, written translations were not

16   provided to them, the documents may not have been translated on a line-by-line basis or at all, and

17   the documents were filled with false and misleading statements.[6]

18          Only three declarants provided testimony addressing Avis, and each of those Declarations

19   contains false statements on matters of relevance to any joint employer analysis:

20   •   **Ahmed Gelle**: Gelle's declaration states that Avis managers disciplined GCA workers and

21

22   [4] Some of the Plaintiffs filed and/or attempted to file DLI claims as well, but they were informed that they could not
     proceed with claims in court with an attorney and pursue a claim before DLI at the same time. Digale 61:13-17; Diria
23   46:14-48:4; Hirey 96:21-98:15; Salad 101:9-102:11.
     [5] The eighth, Abdikhadar Jama, rescheduled his deposition at the last minute and then failed to appear for the rescheduled
24   deposition. Plaintiffs' counsel indicated that Mr. Jama would not be continuing as a plaintiff. Hurley ¶14.
     [6] Avis objects in advance to any attempt by Plaintiffs to submit alternative or corrected testimony on Reply as unfair and
25   a failure to meet their initial burden of proof, and will move to strike or seek a surreply if they do so. *FMC Tech., Inc. v.
     Edwards*, 420 F.Supp.2d 1153, 1157 (W.D.Wash. 2006) (striking new evidence raised in Reply including supplemental
     declarations); *Amazon.com v. Lay*, 758 F.Supp.2d 1154, 1171 (W.D.Wash. 2010) (striking declaration filed with reply);
26   *Fleming v. Parnell*, 2013 WL 4511494, *2 (W.D.Wash. 2013) (granting defendants' motion to file a surreply).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 5
NO.: 2:16-CV-00331-RSL

1    directed that they go home, stating: "I saw this happen several times." Dkt 46 ¶6. However, in his

2    deposition, Gelle admitted he has no personal knowledge of this. His testimony is worth quoting:

3        Q.  Do you recall an Avis Budget manager saying, "I don't want to see this guy here anymore,
             send him home?"
4        A.  That thing happened. It was not about me, it was about somebody else.
         Q.  Did you hear that specific thing said by a manager?
5        A.  I did not directly hear from a person's mouth, but I was told about it.
         Q.  So you didn't witness that; is that correct?
6        A.  I was not a witness, because I am under oath.

7    Gelle 70:10-19. Similarly, when asked about his declaration statement that GCA drivers "frequently

8    received directions" from Avis managers, Gelle admitted that "most of the time" they would

9    communicate through the lead worker. *Id.* 70:4-9 ("any time they want to communicate with

10   anybody it's the lead"). In addition, Gelle admits his declaration misstates his termination date and

11   rate of pay; he has no knowledge of why GCA stopped providing services, what he made for

12   overtime, and what "service agents" means (even though those matters were included in the

13   declaration); and that he did not come up with the 80 employee estimate in his declaration. *Id.* 59:18-

14   65:7. Finally, Gelle testified he could not read the declaration, he has no recollection of its contents,

15   and he only remembers the translator saying "that there was a change in the case." *Id.* 56:1-57:4.

16   • **Khalif Mahamed**:[7] Like Gelle, Mahamed declared Avis managers disciplined GCA workers

17   saying "Send him home" and swore "I saw this happen at least five times." Dkt 49 ¶6. However, in

18   his deposition, Mahamed testified that, on one occasion, he was told by an Avis manager that he

19   needed to leave the location where he was directing traffic because he was on his cell phone, but that

20   he was not disciplined for this. He admitted he had no personal knowledge of any other incidents.

21   Mahamed 52:13-57:15, 76:9-78:11 ("there's nothing else"). Similarly, Mahamed declared that GCA

22   drivers "frequently received directions" from Avis managers, but he testified that the GCA lead

23   drivers "directly work[] with us," "are the ones who are telling us what to," have "a radio," and "get

24   "all [their] communications through the radio, whether that is coming from the supervisor or whether

25   _____
     [7] Mahamed is presumably a Plaintiff. His last name was misspelled in the FAC, but spelled correctly in his declarations
26   relating to summary judgment and class certification. Dkts 18, 49. Mahamed stated he could read documents in English,
     but an interpreter who worked for his attorneys would help with things he did not understand. Mahamed 62:15-63:9.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 6
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

it's coming from the managers or Budget's managers." *Id.* 43:20-44:5. Mahamed's declarations also identify conflicting numbers of GCA employees (175 v. 80), Dkts 18 ¶17, 49 ¶4, but he testified these numbers were from papers he saw, he never counted the employees, and "that does not concern me how many they are," Mahamed 69:17-70:10, 74:15-75:2. At the same time, he testified "I do not know how many people" worked his own shift. *Id.* 42:18-22 ("there's no way I can tell you"). In addition, Mahamed's declarations state that "[a]t no time during my employment with GCA, was I a lead worker [or] supervisor" Dkt 49 ¶ 3, but he testified that "I was sometimes doing those assignments temporarily," Mahamed 68:21-69:10. Finally, Mahamed's declaration does not accurately state his last day of work, *id.* 72:19-73:2, and (although he testified that he was paid $10.30 per hour) he refused to acknowledge that the $10.25 rate in that declaration was not accurate, *id.* 68:16-20, 73:10-74:14. Rather than admit the inaccuracy of his testimony, he stated that "you can get all the information you need from accounting." *Id.*

- **Aneb Abdinor Hirey**: Hirey testified that she understood when she signed her declaration that she was doing so under penalty of perjury, but she admitted her declaration "was not read word by word" to her and instead "was general information." Hirey 35:13-17, 36:16-19, 46:12-17. And, while her declaration states she was "not a supervisor" during her time with GCA, Dkt 47 ¶3, she testified (a) she regularly worked for several months as a supervisor responsible for managing GCA drivers, and (b) when she signed the declaration she did not know that it said she did not work as a supervisor because "nobody asked me whether I was a supervisor or anything else, but I told them I had that position," Hirey 42:1-4, 43:6-20. Hirey also testified that, while her declaration asserts that GCA employees worked as "service agents," she has no knowledge of GCA employees working as service agents and is not even sure what a "service agent" is. *Id.* 27:24-28:8; 24:18-20; 46:18-25. Finally, she admits that her termination date is wrong and that, contrary to the assertion in paragraph 6, she did not "assist customers with baggage." *Id.* 39:24-40:4; 73:13-74:5.

Beyond these three, the other five declarants signed almost identical five-paragraph documents that make no mention of Avis, but are nevertheless filled with inaccurate statements:

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 7
NO.: 2:16-CV-00331-RSL

1    • **Abdikhadar Jama**: Jama did not appear for his deposition, but his declaration misstates his

2    start date (February instead of July 2015), termination date (April 15 instead of March 31, 2016),

3    and rate of pay ($10.30 instead of $9.47). *Compare* Dkt 48 *with* Fisher ¶11, Ex.C. It also asserts "I

4    regularly worked overtime" but he only worked 2/100's of an hour of overtime for GCA. Fisher ¶11.

5    • **Abdisalan Mohamed**: Mohamed is presumably a Plaintiff in this case, but his first name is

6    misspelled in the FAC and in his own declaration. Mohamed 79:22-80:15. During his deposition,

7    Mohamed asked counsel for Avis to fix the spelling of his name. *Id.* Mohamed testified that when he

8    signed the declaration, he told the interpreter of the error and "trusted him to inform my attorney, but

9    I do not know whether he did or not." *Id.* 80:11-25. Mohamed also testified that he signed the

10   declaration despite informing the interpreter that it inaccurately stated his final day at GCA. *Id.* 83:2-

11   85:17 ("He read to me, I signed. I saw the mistake, and I said, What's going on? There's an error

12   here. And he said sorry."). Mohamed stated the interpreter promised to tell his attorney about the

13   mistake and ensure it was corrected. *Id.*

14   • **Jama Diria**: Diria testified that nobody had ever translated his entire declaration for him.

15   Diria 36:15-37:16 (Q: "Before today has anybody ever read every word of this document for you?"

16   A: "No."). As the declaration was read to him in his deposition (apparently for the first time), Diria

17   stated (without any question from counsel) that the declaration incorrectly listed his termination date

18   from GCA. *Id.* 29:10-30:1. Although his declaration states that GCA employees were "mostly

19   employed as drivers and service agents," Diria asked counsel for Avis to explain to him what a

20   service agent was. *Id.* 32:11-33:19. Diria's declaration further states that GCA "employed

21   approximately 80 workers at the Sea-Tac Airport," Dkt 45 ¶4, including individuals from Central or

22   South America. In his deposition, however, Diria admitted that he could not approximate the number

23   of individuals GCA employed at the Airport and did not know of any employees from Central or

24   South America. *Id.* 31:11-24, 32:1-2, 33:20-34:11.

25   • **Lul Salad**: Salad testified that her declaration was read to her, and she knew she was signing

26   under "penalty of law." Salad 62:22-63:3; 64:23-65:4. Nevertheless, she admitted her declaration

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 8
NO.: 2:16-CV-00331-RSL

does not accurately state her start date at GCA, *id.* 46:21-24, her last day working for GCA, *id.* 47:2-10, and her rate of pay, *id.* 48:12-20. Salad told the interpreter and her attorney about some of these mistakes but they were not corrected. *Id.* 53:8-13 ("When I got the copy, I told him I did not start working in 2014, I started working in 2015. And he said, I will tell the attorney, no problem, it will be corrected."), 55:21-56:5 (attorney "was on the computer" when she identified some mistakes). Salad's declaration also states GCA workers were employed as "service agents," Dkt 51 ¶4, but she does not know what a "service agent" is. Salad 42:25-43:12; 51:3-21. Moreover, her declaration states there were 80 GCA employees at SeaTac, Dkt 51 ¶4, but she testified she never told anyone she believed there were 80 GCA employees at SeaTac, Salad 50:24-51:2. She further admitted she never counted her co-workers, worked with only "a few" employees on the night shift, and only saw the number 80 on a letter hanging on the wall at her workplace when she first started with GCA. *Id.* 48:23-50:23. Her declaration also states she worked with employees from the Philippines, Central America, and South America, Dkt 51 ¶4, but she knows of no such employees, Salad, 52:6-14.

- **Rogiya Digale**: Digale testified she understood she was signing her declaration under penalty of perjury and it was interpreted for her in its entirety, yet she was unable to recall any of its contents. Digale 62:5-67:9. She admits the declaration misstates her start date and her "first" hourly rate. *Id.* 67:10-68:17. While the declaration asserts that "GCA employed approximately 80 workers at SeaTac Airport" and some GCA employees worked as "service agents," Dkt 44 ¶4, she was unable to give any such approximation at her deposition and testified that none of the GCA employees were service agents, Digale, 69:22-70:16; 71:1-12.

Three Plaintiffs did not submit declarations in support of class certification.

### III. MOTION TO STRIKE

Avis moves to strike the declarations of Digale (Dkt 44), Diria (Dkt 45), Gelle (Dkt 46), Hirey (Dkt 47), Jama (Dkt 48), Mahamed (49), Mohamed (Dkt 50), and Salad (Dkt 51) (the "Declarations"). The Declarations are not properly authenticated, lack foundation, and are entirely hearsay. Beyond the procedural defects, the Declarations are rampant with speculative testimony and

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 9
NO.: 2:16-CV-00331-RSL

falsehoods such that they cannot serve as a reliable and admissible source of testimony for the Court.

In depositions, all the Plaintiffs who submitted the Declarations testified that they had significant difficulty speaking, reading, and/or writing English. *E.g.*, Hirey 35:10-17; Digale 19:25-20:3, 72:15-18; Mohamed 17:23-24, 71:6-9; Mahamed 62:5-63:4; Diria 7:8-8:11; Gelle 58:9-59:10; Salad 8:21-9:20. Each required the services of a Somali interpreter during their deposition. Hirey 2:16; Digale 2:16; Mohamed 2:17; Mahamed 2:16; Diria 2:12; Gelle 2:12; Salad 2:12. Remarkably, however, the Declarations do not mention Plaintiffs' lack of English proficiency; do not discuss the identity, prior experience, or qualifications of any Somali translator(s) used to draft the Declarations; and do not even state that the Declarations were read or otherwise provided to the Plaintiffs in Somali before Plaintiffs signed them under penalty of perjury. *See* Dkts 44-51; 28 U.S.C. § 1746 (requiring that unsworn declarations be signed under penalty of perjury).

Counsel's handling of the Declarations was improper. "Witness testimony translated from a foreign language must be properly authenticated[,] and any interpretation must be shown to be an accurate translation done by a competent translator."[8] *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994) (citing Fed. R. Evid. 604 and 901 and holding that plaintiffs had failed to lay a proper foundation for the admission of translated exhibits even where (1) foreign language versions of the affidavits were attached to the English version, and (2) an individual at a local translation center stated that the translations were "true and correct"). Furthermore, Plaintiffs' own deposition testimony demonstrates their ignorance regarding the contents of the Declarations. For example, Diria testified nobody had ever provided a word-for-word translation of his declaration

---

[8] *E.g.*, *Kuang v. Bel-Air Mart*, 205 F.Supp.3d 1155, 1159 (E.D.Cal. 2016) ("Defendant objected to Plaintiff's Declaration and the documents attached thereto in their entirety on grounds that the Declaration is submitted and executed in English even though the text of the Declaration states that Plaintiff does not understand and cannot read English. Plaintiff attempts to avoid that issue by stating that some unidentified translator read the Declaration to him. That is insufficient. Any translation must be completed by a certified federal translator."); *Fonseca v. Hall*, 568 F.Supp.2d 1110, 1125 n.10 (C.D.Cal. 2008) (when declarations are not done by "certified interpreters, or any other identified person...they are not properly authenticated, and, as such, are inadmissible in this proceeding"); *Xavier v. Belfor USA Group, Inc.*, 2008 WL 4862533, *4 (E.D.La. 2008) ("There is no support for the proposition that because the standard to prevail on a motion to certify a collective action is less than the standard to prevail on a motion for summary judgment that the rules of evidence also provide for a lesser standard to determine the admissibility of affidavits.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 10
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    until his deposition, Diria 36:15-37:16; Gelle testified he only remembers the translator saying "that

2    there was a change in the case," Gelle 56:1-57:4; and Digale testified her declaration meant "now

3    they are filing another document," Digale 66:22-67:4. Plaintiffs cannot possibly certify that the

4    matters contained in their Declarations are within their personal knowledge when they do not know

5    what the Declarations say.[9] *The Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, *16

6    (C.D. Cal. 2000) (striking English declaration of Mandarin-speaking witness where there was no

7    evidence that the declaration had been translated from English into Mandarin Chinese "word-for-

8    word or accurately and completely"). Indeed, the risk of inaccuracies and unreliability is much

9    higher here, where the translator worked for Plaintiffs' counsel. *E.g.*, *Miranda v. Sweet Dixie Melon*

10   *Co.*, 2009 WL 1324847, *2 (M.D. Ga. 2009) (using interpreter who was an employee of plaintiff's

11   counsel "raises the concern that the interpreter had a motive to distort the translation in favor of

12   Plaintiffs"); Mahamed 63:5-9 (interpreter worked for attorneys).

13          The substantive falsehoods in the Declarations further underscore their unreliability. For

14   instance, each of the Declarations inaccurately list Plaintiffs' last day with GCA. Plaintiffs' ability to

15   correct this error in their depositions suggests the likelihood that the Declarations were not properly

16   translated before Plaintiffs signed them. The Declarations also list other incorrect information that

17   was within Plaintiffs' knowledge, including their wages, start dates, and overtime worked. *See supra*

18   at 5-9. Moreover, Plaintiffs admitted in their depositions that the Declarations contain information

19   beyond their personal knowledge and, despite cookie-cutter statements that GCA employees worked

20   as "service agents," they have no idea what a "service agent" is. *Id.* Likewise, while each of the

21   Declarations states that GCA employed 80 employees at the Airport, the declarants generally

22   testified they do not know the total number of GCA employees at Airport. *Id.* The Declarations are

23   procedurally and substantively unsound and unreliable. This Court should strike them.

---

24   [9] *E.g., Xavier*, 2008 WL 4862533, *3-4 (striking plaintiffs' declarations where they did not contain the identity,
     qualifications, and skill level of the translators, despite plaintiffs' contention that while there were "minor inaccuracies"

25   and the translations were not "word for word," the meaning of the original language was "substantially preserved"); *In re
     Cabral*, 2012 WL 8441317, *4 (E.D.Cal. 2012) (sustaining evidentiary objection to declaration where court did not

26   know whether declarant received a translation before signing the declaration and therefore understood its contents).

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 11
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## IV.  ARGUMENT AND AUTHORITY

**A.      Plaintiffs cannot establish Article III standing**

Plaintiffs amended their Complaint and added the wrong defendants. In a class action, "[t]he plaintiff class bears the burden of showing that the Article III standing requirements are met" by "at least one named plaintiff." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To meet this burden, "a plaintiff must show (1) it has suffered an 'injury in fact'…; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Here, no injury can even arguably be traced to ABG or ARACS because those defendants were not parties to the GCA contract, and Plaintiffs provide no evidence of contact with or claims against ABG or ARACS. Dkts 44-51.

**B.      Plaintiffs cannot establish the prerequisites for class certification**

"'The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *J.T. v. Regence BlueShield*, 291 F.R.D. 601, 611 (W.D.Wash. 2013) (*quoting Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013)). Rule 23 is not a mere pleading standard. *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Rather, a party must be prepared to prove "in fact" that its claims comply with the Rule 23(a) criteria and "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S.Ct. at 1428. The Court must conduct a rigorous analysis that Rule 23 has been satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). "As part of this analysis, the court 'must consider the merits [of the substantive claims] if they overlap with [the class certification] requirements.'" *Id.* at 981.

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Id.* at 979-80. After disregarding Plaintiffs' unsupported factual and legal assertions, *Regence*, 291 F.R.D. at 611, the Court should find that Plaintiffs have not established any of these requirements.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 12
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    **C.      Plaintiffs are not adequate representatives under Rule 23(a)(4)**

2    It is unusual to begin the class certification analysis with a discussion of adequacy of

3    representation (something that is often taken for granted), but it should already be apparent that this

4    is an unusual case. Plaintiffs have demonstrated they lack the honesty, awareness, and diligence

5    necessary to represent a class. Rule 23(a)(4) requires that "the representative parties will fairly and

6    adequately protect the interests of the class." Adequacy is necessary "[t]o satisfy constitutional due

7    process concerns…before entry of a judgment which binds" absent class members. *O'Dell v.*

8    *Conseco Senior Health Ins. Co.*, 2011 WL 13044240, *4 (W.D.Wash. 2011) (citing *Hanlon v.*

9    *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "Resolution of two questions determines legal

10   adequacy: (1) whether the representative plaintiff has conflicts of interest with proposed class

11   members, and (2) whether named plaintiff and his counsel will prosecute the action vigorously on

12   behalf of the class." *Id.* Plaintiffs cannot satisfy the adequacy requirement for a number of reasons,[10]

13   including they have conflicts with the proposed class, they have serious credibility problems, and

14   they are not capable of monitoring their attorneys to protect the interests of the class.

15   First, Plaintiffs have conflicts of interest with putative class members. Initially, Plaintiffs

16   admitted that GCA employees discussed how to proceed on these issues and, while Plaintiffs elected

17   for litigation, 93 proposed class members decided to pursue DLI claims. *See supra* at 5. Plaintiffs

18   request to certify would undercut the decision of those employees, and they would lose the forum

19   they selected if they become members of the class. Plaintiffs appear to recognize this conflict

20   because, although they knew that other employees were pursuing DLI relief, they did not disclose it

21   in the Motion (at 9). In addition, Plaintiffs are attempting to pull putative class members into a case

22   where Plaintiffs have already lost their claims against GCA. This Court's summary judgment

23   decision in favor of GCA does not currently bind putative class members; however, it is the law of

24   the case and can be used against them if they are brought into this case. Moreover, Hirey and

25

26   [10] It is important to remember, "[a]dequacy is for the plaintiff to demonstrate; it is not up to defendants to disprove the presumption of adequacy." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 13
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   Mahamed worked as leads and/or supervisors, and individuals in supervisory roles have inherent

2   conflicts with and are not appropriate class representatives for non-supervisory employees.[11]

3          Second, Plaintiffs' credibility will be an issue for the class. "The honesty and credibility of a

4   class representative is a relevant consideration when performing the adequacy inquiry because an

5   untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Jovel v.*

6   *Boiron, Inc.*, 2014 WL 1027874, *3 (C.D.Cal. 2014) (quoting *Searcy v. eFunds Corp.*, 2010 WL

7   1337684, *4 (N.D. Ill. 2010)). Indeed, "a plaintiff with credibility problems may be considered to

8   have interests antagonistic to the class." *Id.* (*quoting Ross v. RBS Citizens, N.A.*, 2010 WL 3980113,

9   *4 (N.D.Ill. 2010)). Here, credibility problems abound. Plaintiffs signed the Declarations under

10   penalty of perjury even though they could not read the Declarations, did not have them fully or

11   properly translated, and did not know their contents. *See supra* at 5-10; Mahamed 61:12-13

12   (candidly admitting, "Everything or any document that the attorney gave to us, we were signing it.").

13   The Declarations, which are the basis on which the Motion rests, are filled with admittedly false

14   testimony. *See supra* at 5-9. Indeed, testimony central to Plaintiffs' claims was admittedly false:

15     •   Gelle declared that Avis managers disciplined GCA employees (saying "Send him home")

16       and that he "<u>saw this happen several times</u>," but testified that he "was not a witness, because I

17       am under oath." *Compare* Dkt 46 ¶6 *with* Gelle 70:10-19.

18     •   Mahamed declared that he witnessed the same discipline and "Send him home" statements

19       "<u>at least five time</u>," but testified that he only knew of one situation (involving himself) when he

20       was told he could not direct traffic while looking at a cell phone, but was not ultimately

21       disciplined in any way. *Compare* Dkt 49 ¶6 with Mahamed 52:13-57:15, 76:9-78:11.

22   These false statements were targeted at the joint employer issue and are highly relevant here. When

23   presented with such credibility issues, courts deny certification.[12] *E.g.*, *Jovel*, 2014 WL 1027874, *5

24

---

25   [11] *E.g.*, *Hadjavi v. CVS Pharm., Inc.*, 2011 WL 3240763, *6-7 (C.D.Cal. 2011) (supervisor was not an adequate representative for non-supervisor employees); *Hughes v. Winco Foods*, 2012 WL 34483, *7 (C.D.Cal. 2012) (non-supervisor representing class including supervisors problematic); *Wagner v. Taylor*, 836 F.2d 578, 595 (D.D.C. 1987)

26   (supervisors are often inappropriate representatives of non-supervisors because they have distinctly different interests).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 14
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  (denying certification due to inconsistent statements). In fact, "[a] court need not resolve the issue of

2  credibility against the putative class representative in order to bar class certification. It is enough to

3  note the existence of a credibility problem and its potential adverse impact on the class." *Wagner v.*

4  *Lehman Bros. Kuhn Loeb Inc.*, 646 F.Supp. 643, 660-661(N.D. Ill. 1986).

5      Third, courts "have properly denied class certification where the class representatives had so

6  little knowledge of and involvement in the class action that they would be unable or unwilling to

7  protect the interests of the class against the possibly competing interests of the attorneys."

8  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). Here, Plaintiffs are a prime

9  example of this scenario. Plaintiffs do not understand their duties as class representatives. *E.g.*, Gelle

10  57:10-13 ("My responsibility is just to talk about my rights."). Plaintiffs' depositions demonstrate

11  they have "little knowledge of and involvement in" the class action litigation. Beyond the issues with

12  their own declarations, they do not know the content of other pleadings. *E.g.*, Hirey 98:16-22, 101:4-

13  10 ("until now I did not know" that GCA was dismissed; declaration was the only document

14  translated for her in this case); Gelle 25:12-26:2, 54:14-55:1 ("not aware of" and "was not

15  expecting" cost award for GCA; no recollection of the content of the amended complaint). Plaintiffs

16  rely entirely on their counsel (and translator) and do whatever they are told. Digale 62:5-67:9

17  (despite having no knowledge of the content, stating "whatever is mentioned in this document is

18  something that's acceptable to us"); Gelle 55:3-12, 58:20 ("whatever the decision becomes, we are

19  acceptable;" "I am trusting whatever [the translator] says"). This included signing declarations that

20  contained demonstrably false statements either without knowing what was in them or after making a

21  

22  [12] *E.g.*, *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81, 97 (2d Cir. 1998) (inconsistent testimony on material issues); *Bohn v. Pharmavite, LLC*, 2013 WL 4517895, *3-4 (C.D.Cal. 2013)

23  ("credibility will be a significant issue at trial"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 157-60 (S.D.N.Y. 2010) (false testimony and later claim of poor memory); *Searcy*, 2010 WL 1337684, *4-5 ("doubt on the

24  veracity of her sworn statement"); *Shiring v. Tier Tech., Inc.*, 244 F.R.D. 307, 316-17 (E.D.Va. 2007) (certifications with wrong dates and share values demonstrated "a lack of diligence or candor"); *Davidson v. Citizens Gas & Coke Util.*, 238

25  F.R.D. 225, 229 & n.5 (S.D.Ind. 2006) (plaintiff "signed an affidavit prepared by counsel which contained statements he knew to be untrue;" "lack of credibility should not be allowed to significantly detract from the case"); *Kaplan v.*

26  *Pomerantz*, 132 F.R.D. 504, 510-11 (N.D.Ill. 1990) (even if false statements were of marginal relevance, "they evince a willingness to give intentionally false and misleading testimony in an effort to further his interests in this litigation").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 15
NO.: 2:16-CV-00331-RSL

1   decision to sign despite the false statements. *See supra* at 5-10. Under such circumstances, courts

2   have denied class certification.[13] *Davidson*, 238 F.R.D. at 229 (denying certification: "the named

3   representatives are still required to be more than window dressing or puppets for class counsel").

4   **D.      Plaintiffs' counsel are not adequate under Rule 23(a)(4)**

5           In addition to Plaintiffs' inadequacy, Plaintiffs' counsel are not adequate. Counsel has

6   repeatedly demonstrated that they will not "prosecute the action vigorously on behalf of the class."

7   Plaintiffs' counsel have many of these cases and may have been found adequate in other matters, but

8   this Court should consider performance in this case, not others.[14] Counsel's shortcomings start with

9   the Declarations. Counsel drafted declarations with false testimony on key issues, they had their

10  clients sign the Declarations without a written translation or assuring that they were fully aware of

11  the contents, and they filed the Declarations even though they knew or should have known of the

12  false statements.[15] This by itself should be disqualifying, but the list goes on. Plaintiffs' attorneys:

13  (1) filed an action against GCA alone and only pivoted to a new "joint employer" theory after they

14  lost on summary judgment against GCA and failed to appeal that judgment; (2) amended the

15  complaint to add two parties they were not authorized to add and that they knew were not proper

16  parties (despite this Court's warning that they should only amend if they could do so consistently

17  with Rule 11);[16] (3) failed to conduct any discovery in over a year of litigation;[17] and (4) failed to

18

19  [13] *E.g.*, *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 537-38 (N.D. Tex. 2005) ("lack of knowledge and understanding" and "level of reliance on counsel"); *Darvin v. Int'l Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y. 1985) (poor memory

20  and limited personal knowledge of the complaint); *Weisman v. Darneille*, 78 F.R.D 669, 671 (S.D.N.Y. 1978) (plaintiff was not familiar with the suit or the duties of a class representative).

21  [14] *E.g.*, *Better v. YRC Worldwide Inc.*, 2016 WL 1056972, *20 (D.Kan. 2016) ("counsel has demonstrated a lack of diligence, expertise and integrity that cannot be overcome by conclusory reference to their history in other cases");

22  *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D.Mich. 1994) ("it is not reputation built upon past practice, but rather competence displayed by present performance, which demonstrates the adequacy of counsel in a class action").

23  [15] *E.g.*, *Kaplan*, 132 F.R.D. at 510-11 ("review of the transcripts has convinced the Court - as it must any neutral observer - that plaintiff's counsel was at least a silent accomplice in, and at most encouraged plaintiff's false testimony").

24  [16] *E.g.*, *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1169-70 (9th Cir.1975) (certification denied in part because counsel ignored court's specific instructions for how to amend complaint); *Kandel v. Brother Intern. Corp.*, 264

25  F.R.D. 630, 634 (C.D.Cal. 2010) (counsel inadequate in part because "failed to consider the important standing problems faced by the named Plaintiffs" and "failed to follow the Court's…instructions").

26  [17] *E.g.*, *Buckland v. Maxim Healthcare Servs.*, Inc., 2012 WL 3705263, *6 (C.D.Cal. 2012) (counsel failed to conduct discovery); *Motty v. First Student, Inc.*, 2016 WL 4498452, *4 (C.D.Cal. 2016) ("counsel made no discovery requests").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 16
NO.: 2:16-CV-00331-RSL

1    inform this Court that there were 93 GCA employees who chose to pursue their claims with DLI

2    rather than in court and, instead, stated there were no other actions. Again, these are just examples.

3    This Court should find that Plaintiffs' counsel are not adequate. *E.g.*, *Taub v. Glickman*, 14

4    Fed.R.Serv. 847, at 2-3 (S.D.N.Y. 1970) ("[s]uch an assembly line procedure in prosecuting this suit

5    suggests that something less than a forthright and vigorous approach has been taken herein").

6    **E.     Plaintiffs fail to establish typicality under Rule 23(a)(3)**

7            "The typicality requirement is met if the claims or defenses of the representative party are

8    typical of the claims or defenses of the class." *O'Dell*, 2011 WL 13044240, *3. "Class certification

9    is inappropriate where the putative class representative is subject to unique defenses that threaten to

10   become the focus of the litigation." *Id.*

11           Here, Plaintiffs are not representative of many GCA employees. Plaintiffs worked on-airport.

12   Gelle 52:10-12. Other shuttlers worked off-airport. Fisher ¶7-8. Plaintiffs do not know "what their

13   experience is and their jobs and who they communicate with." Hirey 75:20-76:9. Also, their interests

14   are not aligned. GCA employees at off-airport locations face SeaTac statutory coverage issues that

15   Plaintiffs have no need to address. This difference in course of conduct and potential legal theories

16   defeats typicality. *E.g.*, *Schneider v. Ecolab, Inc.*, 2016 WL 7840218, *7-8 (N.D.Ill. 2016).

17           Moreover, Plaintiffs are subject to unique defenses that will be a focus of the litigation. First,

18   they are subject to the defense of res judicata because their claims against GCA were dismissed and

19   they did not appeal. In contrast, putative class members are not, at this time, bound by this Court's

20   decision. This alone is sufficient for denial of class certification. *E.g.*, *Zenith Labs., Inc. v. Carter-*

21   *Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (class representative subject to res judicata defense

22   not typical); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 614 (D.Kan. 2008) (same); *Blankner*

23   *v. City of Chicago*, 504 F.2d 1037, 1043 (7th Cir. 1974) (same for res judicata and collateral

24   estoppel). In addition, Plaintiffs will be subject to defenses related to the false statements in the

25   Declarations. *E.g.*, *Kaplan*, 132 F.R.D. at 510 ("credibility problems interfere with plaintiff's

26   satisfaction of the typicality requirement"). Moreover, Plaintiffs are subject to a standing defense

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 17
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    because they added two defendants in the FAC against whom they have no claims. Finally, as leads

2    or supervisors, Hirey and Mahamed may not be covered by the SeaTac ordinance (which excludes

3    supervisors and managers) and will undoubtedly be focused on that issue. The presence of these

4    unique defenses warrant denial of class certification. *E.g.*, *Beck v. Maximus, Inc.*, 457 F.3d 291, 296-

5    302 (3d Cir. 2006) (vacating certification because the "presence of even an arguable defense peculiar

6    to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality").

7    **F.    Plaintiffs' class definition is deficient and seeks an impermissible "failsafe" class**

8            The Ninth Circuit recently rejected the administrative feasibility requirement that many

9    courts require for class certification. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28

10    (9th Cir. 2017). But, the Court also reemphasized that plaintiffs cannot meet their burden on

11    certification with a deficient class definition. *Id.* at 1124 n.4. Instead, plaintiffs must set forth "a

12    class definition that describes 'a set of common characteristics sufficient to allow a prospective

13    plaintiff to identify himself or herself as having a right to recover based on the description.'"

14    *Erickson v. Elliot Bay Adjustment Co., Inc.*, 2017 WL 1179435, *11 (W.D.Wash. 2017). "Class

15    membership 'must be determinable from objective, rather than subjective, criteria.'" *Id.*

16            Plaintiffs' class definition fails this requirement of objective criteria because it defines the

17    class in terms of those "employees of GCA jointly employed by Avis-Budget." Dkt 41 at 4. Because

18    (as Plaintiffs claim) the threshold liability issue is "Whether Avis-Budget was a joint-employer of

19    workers primarily employed by GCA," *id.* at 5, this definition requires a resolution of the merits and

20    constitutes an improper "failsafe" class. A failsafe class happens when the class is defined in a way

21    that precludes membership unless the liability of the defendant is established. *Taylor v. Universal*

22    *Auto Group I, Inc.*, 2014 WL 6654270, *21 (W.D.Wash. 2014). "[T]he Ninth Circuit recognized that

23    fail-safe classes are 'palpably unfair to the defendant,' and are also 'unmanageable.'" *Savannah*

24    *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, *3 (C.D.Cal. 2016) (*quoting Kamar v.*

25    *Radioshack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010), as cited in *Torres v. Mercer Canyons*

26    *Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016)). Failsafe classes are prohibited because they would

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 18
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   allow putative class members to seek a remedy but not be bound by an adverse judgment -- either the

2   class members win or, by virtue of losing, they are not in the class and are not bound. *Taylor*, 2014

3   WL 6654270, *21. The existence of a failsafe class constitutes an independent ground for denying

4   class certification.[18] *Id.* at *22; *see also Savannah*, 2016 WL 8919460, *3 ("the Court concludes that

5   fail-safe classes should not be certified under Ninth Circuit law").

6   **G.      Plaintiffs fail to establish numerosity under Rule 23(a)(1)**

7          The numerosity criteria requires Plaintiffs to show "that the potential class [is] 'so numerous

8   that joinder of all members is impracticable.'" *Z.D. ex rel. J.D. v. Group Health Co-op.*, 2012 WL

9   1977962, *3 (W.D.Wash. 2012). "In general, courts find the requirement satisfied when a class

10  includes at least 40 members." *Id.* Plaintiffs rely entirely on the Declarations to establish numerosity,

11  see Dkt 41 at 5, but in fact offer no evidence that there are any more members than the eleven

12  Plaintiffs. First, the improper failsafe class definition establishes no objective number of members in

13  the potential class. Second, Plaintiffs offer no admissible evidence of the class size given the

14  fundamentally flawed nature of the Declarations and their testimony that they do not know the

15  number of GCA employees. Third, even if the Declarations are admissible, Plaintiffs offer no

16  evidence of the number of GCA employees who worked at the Airport (as compared to performing

17  off-airport work). Fourth, they offer no evidence of how many GCA employees remain if the 93

18  employees who filed claims with DLI are excluded. Plaintiffs cannot establish numerosity.

19  **H.      Plaintiffs fail to establish commonality and predominance**

20         Rule 23(a)(2) establishes a commonality requirement, *i.e.* that there be "questions of law or

21  fact common to the class." To satisfy this requirement, plaintiffs must demonstrate that the claims of

22  all class members depend on "a common contention" of such nature as "is capable of classwide

---

23  [18] Although Plaintiffs may argue that the Court has the discretion to fix the definition rather than deny class certification,
    given the myriad other flaws in the Motion and the fact that Plaintiffs have provided no evidence that would allow the

24  Court to objectively define the class, the Court should not endeavour to fix Plaintiffs' errors. *E.g.*, *Lith v. Iheartmedia +
    Entertainment, Inc.*, 2016 WL 4000356, *5 (E.D.Cal. 2016) ("The Court declines to exercise its discretion to redefine the

25  class…In the Court's view, Plaintiff should bear the burden of writing his complaint in a permissible manner. This Court
    does not have the duty, time, or willingness to do so."). If the Court does consider this course, defendants respectfully

26  request an opportunity to address any revised definition.

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 19
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   resolution." *David v. Bankers Life & Cas. Co.*, 2016 WL 2610246, *1 (W.D.Wash. 2016) (*quoting*

2   *Dukes*, 131 S.Ct. at 2551). The test is whether the determination of the truth or falsity of such

3   common contention "will resolve an issue that is central to the validity of each one of the claims in

4   one stroke." *Id.* "What matters ... is not the raising of common 'questions'-even in droves-but, rather

5   the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of

6   the litigation." *Id.* Assessing commonality requires understanding the nature of plaintiffs' underlying

7   claims. *Id.* (*citing Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014)).

8       Rule 23(b)(3) establishes a predominance requirement, *i.e.* that questions of law or fact

9   common to class members predominate over any questions affecting only individual members. *Id.* at

10  *2. The predominance inquiry focuses on "the relationship between the common and individual

11  issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

12  representation." *Id.* (*quoting Hanlon*, 150 F.3d at 1022). The Court considers whether questions

13  common to the class represent significant issues that can be resolved in a single adjudication, and

14  whether adjudicating common issues will promote judicial economy. *Id.* (*citing Zinser v. Accufix

15  Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).

16      The threshold issue in this case is whether Avis is a joint employer of the Plaintiffs.

17  Defendants ABG and ARACS had no contractual relationship with GCA, had no employees at

18  SeaTac, and had no contact with Plaintiffs. There is no possibility that these defendants could be

19  considered a joint employer of Plaintiffs. If the Court nevertheless proceeds with a commonality and

20  predominance analysis despite the many threshold issues that independently warrant denial of class

21  certification, application of the "economic reality" test enunciated in *Becerra v. Expert Janitorial,

22  LLC*, 181 Wn.2d 186, 196-97, 332 P.3d 415 (2014), will require extensive inquiry into the individual

23  circumstances of each employee. The testimony from Avis witnesses and Plaintiffs agrees that all of

24  the *Becerra* factors except for the first two "regulatory factors"[19] clearly point to no joint

25

26  _____

[19] *Becerra*, 181 Wn.2d at 196-97 ("(A) The nature and degree of control of the workers; (B) The degree of supervision, direct or indirect, or the work…").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 20
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    employment by Avis. Weighing of these factors (control and supervision) will require inquiry into

2    detailed individual facts regarding where each employee worked, whether they were a supervisor or

3    lead (at any point during the class period), and how much and what kind of contact they had with

4    ABCR managers (including direction, supervision and discipline).[20]

5          GCA employees worked in a number of locations (not all at the Airport in the City of

6    SeaTac), performed different shuttling work, and had different exposure to and levels of interaction

7    with ABCR managers.[21] The Declarations (to the extent admissible) only describe Plaintiffs'

8    personal experiences at the Airport and do not describe the experiences of other GCA employees, or

9    work at other locations doing different shuttling jobs. *E.g.*, Dkts 44-51 (paragraphs 2-4). The

10   Declarations and Plaintiff testimony actually highlight the distinctions between GCA employees,

11   even at the Airport. Three declarations discuss contact with Avis managers whereas five do not. *See*

12   *supra* at 5-9. Plaintiffs generally testified that GCA supervisors and leads told them what to do

13   whereas a few testified about specific interactions with Avis managers. *Compare* Digale 35:19-21

14   ("Avis will talk to the supervisor and then the supervisor will talk to the lead and then the lead will

15   talk to us") *with* Mahamed 52:10-57:15 (describing when he was told to stop directing traffic

16   because he was looking at his cell phone) *and* Dkt 49 ¶6 (directed "frequently"). Courts have found

17   that, when joint employer status depends on the testimony of individual employees, the commonality

18   and predominance requirements are not satisfied.[22] *E.g.*, *Maddock v. KB Homes, Inc.*, 248 F.R.D.

19   229, 245-46 (C.D.Cal. 2007) (discussing variations in "declarations of current and former sales

20   ————————————————
     [20] It is this key testimony that Plaintiffs (or their counsel) falsified in the Declarations.

21   [21] *E.g.*, Diaz ¶19-22 (addressing various shuttling locations and activities; estimating 50% of GCA's shuttling work was
     off-airport); Fisher ¶7-8 (noting some GCA employees worked on-airport, others off-airport, and at times employees

22   worked both on- and off-airport without time records of where they spent each hour in a given shift); Bouge ¶6-9
     (discussing Avis communications in-person and via radio with GCA lead drivers who reported to the Tukwila service

23   facility and drove between various rental car locations outside of SeaTac); Kendrick ¶6-9 (discussing Avis
     communications with GCA lead drivers and other GCA workers who worked at the Airport); Salad 33:3-12 (different

24   types of shuttle drivers, some worked at SeaTac and others drove away from SeaTac).
     [22] *E.g.*, *Ouedraogo v. A-1 Intern. Courier Serv., Inc.*, 2014 WL 4652549, *6 (S.D.N.Y. 2014) ("Plaintiff has failed to

25   prove that common questions regarding the putative class members' status as employees are answerable on a classwide
     basis"); *Echavarria v. Williams Sonoma, Inc.*, 2016 WL 1047225, *12 (D.N.J 2016) ("Plaintiffs cannot prove their case

26   without individualized evidence" because joint employer theory turns "on the specific relationship between the worker
     and the purported employer, and control is a key element").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 21
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    agents" and finding "whether KB Home meets the definition of an 'employer' or 'joint employer'

2    under the FLSA and California law further demonstrates that common issues do not predominate").

3           There are significant similarities between this case and this Court's decision in *David v.*

4    *Bankers Life & Cas. Co.*, 2015 WL 3994975, *7 (W.D.Wash. 2015). Although *David* required

5    application of the "economic dependence" test to determine if the employees were independent

6    contractors, the "economic reality" test under *Becerra* shares several key factors, including the

7    degree of control of the workers. *Compare David*, 2016 WL 2610246, *3, *with Becerra*, 181 Wn.2d

8    at 196-97. In finding that the economic dependence test could not be applied on a class basis, this

9    Court found that employees had different personal experiences with the alleged employer:

10          Looking at the economic reality of agents' experiences, it is clear that different class
            members enjoyed different relationships with the company during the class period.

11   *David*, 2015 WL 3994975, *7. This Court found that, "[d]etermining whether class members are

12   employees…would require an individualized inquiry into each agent's employment experience…

13   [and] [i]t follows that individualized fact questions predominate over common ones." *Id.* *8. In the

14   same way, and for the same reasons, individual facts will predominate in this case as well.

15          Plaintiffs also fail to establish that common issues predominate when attempting to prove the

16   alleged violation of the SeaTac ordinance.[23] To prove a violation, Plaintiffs will have to introduce

17   evidence regarding where each employee worked (inside or outside the City of SeaTac and for what

18   periods of time), what work they did, and whether they were exempt from the ordinance

19   (supervisors). See SMC 7.45.010(M), (N), 7.45.050. Some GCA employees worked mostly within

20   SeaTac, some worked entirely outside SeaTac, and some moved in and out. *See supra* at 21. Because

21   GCA did not track this information, Fisher ¶ 8, it will require detailed individual testimony to

22   determine where each employee worked. Plaintiffs thus cannot establish predominance.

23

---

24   [23] Plaintiffs also include an unjust enrichment argument but it is facially invalid. Black letter law provides that, when a
     contract exists (as the CBA here), the party providing services "is not entitled to compensation therefore other than in

25   accordance with the terms of such bargain." Restatement of Restitution § 107(1) (1937); *In re Coordinated Pretrial
     Proceedings*, 109 F.3d 602, 612 (9th Cir. 1997) ("the general rule is…that when a person makes a contract with eyes

26   open to be paid a certain amount for his services, that is all he gets").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 22
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   **I.      Plaintiffs fail to establish that a class action is manageable and superior**

2          Beyond predominance, Rule 23(b)(3) also requires plaintiffs to demonstrate that class

3   resolution is superior to other available methods for the fair and efficient adjudication of the

4   controversy. *O'Dell*, 2011 WL 13044240, *8. The test is whether efficiencies can be achieved

5   "without sacrificing procedural fairness or bringing about other undesirable results." Advisory

6   Comm. on Rule 23, 39 F.R.D. 69, 102-03 (1966). The superiority inquiry requires determination of

7   whether the objectives in the particular class action procedure will be achieved in the particular case.

8   *O'Dell*, 2011 WL 13044240, *8. This determination necessarily involves a comparative evaluation

9   of alternative mechanisms of dispute resolution. *Id.* This includes comparing the class action to

10  administrative proceedings.[24] *Pattillo v. Schlesinger*, 625 F.2d 262, 265 (9th Cir. 1980) ("class

11  action procedure is not superior to the ongoing administrative proceedings for the notification and

12  payment of former service personnel"). Here, DLI hearings are not just available, 93 GCA

13  employees elected to pursue relief through the DLI administrative process. Since DLI will not

14  investigate on behalf of individuals with claims pending in court, Digale 61:13-62:3, certifying this

15  class poses the threat of stripping these 93 individuals of their right to choose the administrative

16  process over protracted class litigation.

17         In addition, Rule 23(b)(3) requires plaintiffs to prove that a class proceeding will be

18  manageable, which typically requires that they articulate a plan for how individual issues in the case

19  will be tried. *E.g.*, *Zinser*, 253 F.3d at 1190; *Kirkpatrick v. Ironwood Communications, Inc.*, 2006

20  WL 2381797, *11 (W.D.Wash. 2006) ("Plaintiffs must submit a plan for litigating this action. The

21  plan must demonstrate to the court that Plaintiffs can manage this action in a manner in which

22  common issues predominate over individualized issues.") Here, Plaintiffs have not provided a plan

23  or even discussed how proof issues will be managed and liability can be established on a class basis.

24         Finally, for the reasons outlined in the commonality and predominance sections, individual

---

25  [24] *E.g.*, *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 253-54 (C.D.Cal. 2006) (class action not superior because a Division of Labor Standards Enforcement ("DLSE") administrative hearing presents a viable alternative); *Lanzarone v.*
26  *Guardsmark Holdings, Inc.*, 2006 WL 4393465, *5 (C.D.Cal. 2006) (no superiority because DLSE hearing available).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 23
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  issues will result in a multitude of mini-trials and thus there is no superiority.[25]

2  **J.      Plaintiffs' arguments under Rule 23(b)(2) are meritless**

3          As this Court has held, Rule 23(b)(2) "cannot be used to certify a claim for monetary

4  relief,…'at least where (as here) the monetary relief is not incidental to the injunctive or declaratory

5  relief.'" *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, 2015 WL 9487928, *3 (W.D.Wash. 2015)

6  (*quoting Dukes*, 131 S.Ct. at 2551); *Ellis*, 657 F.3d at 987 (Rule 23(b)(2) does not involve notice or

7  an opportunity to opt-out and, absent these protections, certification of a class action predominantly

8  for monetary damages "violates due process"). Here, Plaintiffs claims are for monetary relief

9  (wages) and can only be for monetary relief because there is no basis for injunctive relief here.

10  Plaintiffs no longer work for GCA and, to the extent they work for FleetLogix, they are being paid at

11  least the SeaTac minimum wage for work in the City of SeaTac. *E.g.*, Gelle 65:12-14.

12                           **V.  REQUEST FOR ATTORNEYS' FEES**

13          This Court cautioned Plaintiffs and their counsel that they should only file an amended

14  complaint naming ABCR if they could do so "consistent with their Rule 11 obligations." Dkt 32 at 2.

15  They did not. In fact, they violated the Court's Order by suing parties (ABG and ARACS) against

16  whom Plaintiffs have no possible claim. This is the definition of frivolous. 28 U.S.C. § 1927

17  provides for the recovery of excess costs, expenses, and fees in such circumstances. *B.K.B. v. Maui*

18  *Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002). Such relief is especially appropriate in this case,

19  where Plaintiffs and their counsel have submitted and relied upon grossly inaccurate declarations as

20  the only evidence warranting certification. Should the Court authorize an award, defendants request

21  the opportunity to provide evidence as to the costs, expenses, and fees incurred.

22                              **VI.  CONCLUSION**

23          Based on the foregoing, defendants respectfully request that the Court deny the Motion.

24

---

25  [25]*E.g.*, *Hughes*, 2012 WL 34483, *9 (no superiority because a "class proceeding would not promote greater efficiency because the class action would devolve into hundreds or thousands of 'mini-trials;' thus, the difficulties associated with pursuing these claims via a class action outweigh any benefits"); *Brown v. Fed. Ex. Corp.*, 249 F.R.D. 580, 587-88 (C.D.Cal. 2008) (no superiority because of need for individual proofs).

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 24
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

DATED this 5th day of June, 2017.

2
          K&L GATES LLP

3

4
         By *s/ Patrick M. Madden*

5
         Daniel P. Hurley, WSBA #32842
         Patrick M Madden, WSBA #21356

6
         Mark S Filipini, WSBA #3250
         925 Fourth Avenue, Suite 2900

7
         Seattle, WA 98104-1158
         Tel:  (206) 623-7580

8
         Fax: (206) 623-7022

9
         Email:  patrick.madden@klgates.com

10
         *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 25
NO.: 2:16-CV-00331-RSL

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on June 5, 2017, I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system which will send notification of such filing to all of the registered

4

CM/ECF users for this case.

5

6

7

                  By *s/ Patrick M. Madden*
                       Patrick M Madden, WSBA #21356

8

                       Daniel P. Hurley, WSBA #32842

9

                       Mark S Filipini, WSBA #3250
                       925 Fourth Avenue, Suite 2900

10

                       Seattle, WA 98104-1158
                       Tel:  (206) 623-7580

11

                       Fax:  (206) 623-7022
                       Email:  patrick.madden@klgates.com

12

13

                       *Attorneys for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION - 26
NO.: 2:16-CV-00331-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022