UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIKHADAR JAMA, *et al.*,

Plaintiffs,

v.

GCA SERVICES GROUP, INC., AVIS BUDGET GROUP, INC., and AVIS RENT A CAR SYSTEM, LLC,

Defendants.

Case No. C16-0331RSL

ORDER CERTIFYING CLASS

This matter comes before the Court on "Plaintiffs' Motion for Class Certification, Appointment of Class Counsel and Appointment of Class Representative." Dkt. # 41. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

## I. BACKGROUND

Plaintiffs initially filed this suit against GCA Services Group, Inc., alleging that GCA Services had failed to pay the minimum wage required by SeaTac Municipal Code § 7.45 (the

---

[1] Defendants' motion to strike plaintiffs' declarations in their entirety because they must have been translated from a foreign language and/or because they are "rampant with speculative testimony and falsehoods such that they cannot serve as a reliable and admissible source of testimony for the Court" is DENIED. The Court will not assume that the declarations were translated and will address the admissibility of particular statements as they are relevant to the Rule 23 analysis. The Court has not considered the Second Declaration of Daniel R. Whitmore (Dkt. # 59).

ORDER CERTIFYING CLASS - 1

"Ordinance") and seeking back pay. The Court found, however, that GCA Services does not fall within the definition of "Transportation Employer" and was not subject to the ordinance. Plaintiffs requested and were granted leave to amend their complaint to add claims against a different entity, Avis Budget Car Rental, LLC, on the ground that it was also their employer under the economic realities test set forth in <u>Becerra v. Expert Janitorial, LLC</u>, 181 Wn.2d 186, 196-97 (2014). On January 18, 2017, plaintiffs filed an amended complaint restating their claims against GCA Services and adding Avis Budget Group, Inc., and Avis Rent a Car System, LLC (collectively, "Avis-Budget") as defendants. The claims against GCA Services were subsequently dismissed by stipulation of the parties.

Plaintiffs seek to certify a class comprised of:

> All employees of [GCA Services] jointly employed by Avis-Budget who have been either Hospitality Workers or Transportation Workers and who worked one or more hours within the City of SeaTac at any time during the time period between January 1, 2014, to [] April 2016, who were paid less than the prevailing minimum wage prescribed by City of SeaTac Ordinance 7.45.050, and who have not released fully their claims arising under that statute.

Dkt. # 41 at 4. The Avis-Budget defendants oppose class certification on a number of grounds, many of which are based on the assertion that plaintiffs have named the wrong Avis-Budget entities as defendants. Avis-Budget also argues that some or all of the named plaintiffs are atypical/unrepresentative of the class and objects to the proposed class definition on the ground that it would create an impermissible "failsafe" class. While not conceding that the "failsafe" argument has merit, plaintiffs note in reply that any unknowns can be avoided by amending the class definition to remove the reference to "jointly employed by Avis-Budget" and to insert "as part of GCA [Services'] contract to provide labor services to Avis-Budget."

## II. DISCUSSION

**A. Standing**

Plaintiffs filed their amended complaint on January 18, 2017. In their answer, the Avis-Budget defendants acknowledged that unnamed subsidiaries of Avis Budget Group, Inc., provide

ORDER CERTIFYING CLASS - 2

rental car services at SeaTac. Dkt. # 39 at ¶¶ 7-8. They denied that they contracted with GCA Services, however, and also denied being joint employers of the putative class, asserting affirmative defenses based on lack of standing and failure to join indispensable parties. Defendants have not filed a motion to dismiss or otherwise sought a resolution of the factual disputes regarding their potential liability as joint employers.

The issue currently before the Court is whether the named plaintiffs should be permitted to litigate on behalf of a class of individuals who shuttled Avis-Budget cars around the SeaTac airport. If defendants intend to seek dismissal of plaintiffs' claims on standing or other grounds, they must file a motion, noted for the fourth Friday after filing, so that the issues may be properly briefed.

**B. Prerequisites of a Class**

Pursuant to Fed. R. Civ. P. 23(a), a court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Rule 23. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012). The Rule "does not set forth a mere pleading standard:" the party seeking class certification must "affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in original).

**(1) Numerosity**

Most of the named plaintiffs have submitted declarations stating that, at any given time, GCA Services and the Avis-Budget defendants jointly employed approximately 80 people at the SeaTac facility. See Dkt. # 44 at ¶ 2. Defendants challenge the sufficiency of this evidence, arguing that the declarations contain other statements that are false and that the Court should

ORDER CERTIFYING CLASS - 3

simply ignore the declarations in their entirety because the declarants are not credible. Credibility determinations are rarely made on the papers, however, and defendants have not provided any contrary evidence regarding the number of putative class members. Defendants submitted the declaration of the Senior Regional Manager for GCA Services with their opposition, but he does not controvert plaintiffs' statements regarding the number of employees at issue, does not disclose what that number is, and makes no attempt to support defendants' assertion that some employees identified by plaintiffs never worked in the City of SeaTac.[2] The documents attached to Mr. Fisher's declaration suggest that there were at least 93 putative class members who filed wage complaints with the Department of Labor & Industries, in addition to the eleven named plaintiffs. Dkt. # 56-2 at 24-27. The Court finds that this class size is sufficient to meet the numerosity requirement. See Ali v. Menzies Aviation, Inc., No. 2:16-cv-00262RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ("As a general rule a potential class of 40 members is considered impractical to join.") (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).

In the alternative, defendants argue that the class definition must be altered to exclude the 93 individuals who filed a DLI claim against GCA Services, presumably because DLI told two of the named plaintiffs that they could not file an administrative claim if they had an attorney. Dkt. # 56-8 at 20 (Hirey); Dkt. # 56-11 at 11-12 (Salad).[3] Defendants offer no legal authority or analysis explaining how a pending administrative review impacts an employee's right to seek judicial relief or vice versa. Defendants' theory seems to be that the filing of a complaint will automatically terminate the DLI investigation, to the consternation of the 93 employees who

---

[2] Rather, Mr. Fisher states "Although [the agreement between GCA Services and Avis Budget Car Rental LLC] generally distinguished between 'On Airport' (i.e., within SeaTac) and 'Off Airport' (i.e., outside of SeaTac) work, GCA [Services] would at times use Off Airport and On Airport employees interchangeably . . . ." Dkt. # 56-2 at ¶ 8.

[3] Two other plaintiffs apparently heard from co-workers that they could not pursue a DLI claim against GCA if they were represented by an attorney. Dkt. # 56-7 at 7-8 (Digale); Dkt. # 56-10 at 8 (Diria). These statements cannot be admitted as evidence of the truth of the matters asserted.

ORDER CERTIFYING CLASS - 4

opted to pursue relief from Labor & Industries. That possibility is considered below when evaluating adequacy of representation.[4] For purposes of the numerosity analysis, the members of the class, as defined, are sufficiently numerous to justify a class action. The Court will not exclude employees who clearly fall within the class definition absent some legal analysis showing that they cannot, as a matter of law, be members of the class.

**(2) Commonality**

In order to satisfy the commonality criterion, the class members' claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 338 (2011). A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014). As defendants' opposition makes abundantly clear, the key common question capable of classwide resolution is whether the named Avis-Budget defendants are joint employers with GCA Services. If that common question is resolved in plaintiffs' favor, other common questions arise, such as:

    a) Whether defendant had a duty to pay its non-managerial employees the minimum hourly wages provided within the Ordinance.

    b) Whether defendant wrongfully withheld the minimum hourly wages provided within the Ordinance.

    c) Whether defendant's failure to pay its employees the minimum wage provided within the Ordinance constituted a statutory violation.

    d) Whether defendant was unjustly enriched by withholding the minimum hourly wages provided within the Ordinance.

    e) Whether injured employees are entitled to receive punitive or double damages as result of defendant's willful withholding of the minimum hourly wages provided within the Ordinance.

---

[4] It is also possible that, if an employee initiates an administrative investigation, he or she is required to exhaust the administrative remedies or terminate the proceeding before filing a lawsuit. Defendants have not articulated such a theory, however, or otherwise shown that 93 putative class members are barred from proceeding in court and cannot be counted for purposes of determining numerosity.

ORDER CERTIFYING CLASS - 5

f) Whether plaintiffs' claim for injunctive relief is viable.

Each of these questions relates to defendants' alleged failure to pay the prevailing wage and the answer to these questions will be the same for every class member. Commonality is satisfied.

**(3) Typicality**

The typicality requirement "ensures that the interests of the class representative aligns with the interests of the class." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). The named plaintiffs' claims need not be identical to those of the absent class members, but they must be reasonably similar in light of the injuries suffered and the conduct that allegedly caused the injuries. Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014); Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1141 (9th Cir. 2016). Class certification is not appropriate if there is a danger that the absent class members will suffer because their representative is preoccupied with defenses unique to him or herself. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Avis-Budget argues that the named plaintiffs are not typical of the class because they worked at the airport and would have no interest in proving that individuals who did not work at the airport are entitled to wages under the Ordinance. Individuals who never worked at the airport do not fall within the class definition. The fact that there is a distinction between the class representatives and individuals who are not part of the class is irrelevant. To the extent defendants are arguing that the named plaintiffs will not pursue back pay for hours worked outside of SeaTac, at least one of the named plaintiffs worked hours outside of the City and would therefore have an interest in pursuing pay for those hours (if such a claim can be made under the Ordinance).

Defendants also argue that the named plaintiffs are subject to unique defenses which will become the focus of the litigation, including res judicata, lack of standing, and credibility challenges. Defendants have not, however, asserted a defense of res judicata, nor is there any

ORDER CERTIFYING CLASS - 6

indication that the claims against them could possibly be barred by a prior determination in favor of GCA Services. With regards to the standing argument, the named plaintiffs are in the same position as the absent class members: if defendants file a motion arguing that plaintiffs have sued the wrong Avis-Budget entity, the entire class shares the same interest in defending the choice of defendants and/or identifying the correct Avis-Budget subsidiary.

Defendants spend six pages of their memorandum detailing what they call rampant speculation and falsehoods in the declarations submitted by eight of the named plaintiffs. The Court has reviewed the declarations and the related deposition testimony. Most of the declarations are no more than two pages long and provide basic employment information in a boilerplate form. Virtually all of the declarations misstate something -- the witness' dates of employment, hourly wage, source of knowledge, etc. Defendants point out a wide variety of discrepancies between the declarations and the witness' deposition testimony, and the general impression is that plaintiffs' counsel drafted the declarations and was not particularly careful when confirming their accuracy with his clients. Whatever credibility issues are lurking in the bare bones declarations before the Court, there is very little chance that they will have an impact on the outcome of the litigation. The ultimate fact finder is not likely to find that Ms. Salad, for example, is untrustworthy simply because the whisper-down-the-lane communication tree counsel relied upon to vet these declarations resulted in the misstatement of her start date. Dkt. # 56-11 at 8.

In some instances, defendants identify misrepresentations on weightier subjects that could be relevant to the substantive issues in this case. A review of the record shows, however, that the alleged misrepresentations sometimes disappear, or at least are not nefarious, when one considers the actual statements of the witness. By way of example, defendants take issue with Khalif Mahamad's statement that "If [an Avis-Budget] manager became upset with a GCA [Services] worker, he or she would say, 'I don't want to see this guy here anymore. Send him home,' or words to that effect. I saw this happen at least five times." Dkt. # 49 at ¶ 6. Defendants argue that Mr. Mahamad lied when he said he saw Avis-Budget managers control the work

ORDER CERTIFYING CLASS - 7

environment of GCA Services employees on five occasions, citing to his deposition testimony. In that testimony, Mr. Mahamad recounted an instance when he was sent home by an Avis-Budget manager for looking at his cell phone while working. In response to the question ". . . other than the one situation you described, can you tell me any other circumstances where you have been told to go home by someone at Avis Budget," Mr. Mahamad said "I have already told you what happened to me and there is nothing else." Dkt. # 56-6 at 11-12. Defense counsel did not ask Mr. Mahamad whether he had seen Avis-Budget managers disciplining other workers, which is the topic of his declaration. Many of the "rampant" falsehoods defendants identify in their memorandum are, in fact, unsupported by the record or nothing more than inconsequential mistakes.

It appears that defendants intend to focus their litigation strategy on the slipshod way in which the declarations were drafted, reviewed, and signed. There are undoubtedly errors in the declarations provided. That does not, however, mean that plaintiffs' interests are not aligned with the class. There is no reasonable likelihood that the identified falsehoods -- many of which have little relevance to this motion and can be conclusively resolved by reference to the employment records -- will be a focus of the litigation. If defendants repeat their rampant falsehood arguments in every memorandum, that is their prerogative, but it does not change the actual focus of the case. In addition, three of the named plaintiffs have not provided declarations and have no credibility concerns that could even arguably make them atypical of the class.

Finally, defendants argue that two of the named plaintiffs are leads or supervisors and therefore many not be covered by the Ordinance at all. The evidence offered to support this argument is the testimony of Mr. Mahamad and Ms. Hirey. Mr. Mahamad stated that "I have never been [a lead worker, supervisor or manager], but when they need somebody to do that work, I was assigned and I was doing it." Dkt. # 56-6 at 9. Ms. Hirey testified that she worked two days a week as a supervisor for a five month period that "occurred" in October 2016, long after the class period ended. Dkt. # 56-8 at 4. The record does not support a finding that either Mr. Mahamad or Ms. Hirey were supervisors or otherwise atypical of the class they seek to

ORDER CERTIFYING CLASS - 8

represent.

The Court finds that the named plaintiffs' claims are "reasonably co-extensive with those of absent class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Each class member has claims based on the same alleged wrong as plaintiffs: a joint employer's failure to pay the prevailing wage. If the named plaintiffs were to establish defendants' statutory liability, such proofs would also establish the claims of the absent class members. Thus, typicality is met here.

**(4) Adequacy of Representation**

Two questions determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting Hanlon, 150 F.3d at 1020). As discussed above, the named plaintiffs' claims and interests are aligned with those of the class, and there is no reason to suspect that they will not pursue their joint employer theory and the recovery of wages to the fullest extent possible. Defendants argue, however, that the named plaintiffs have a conflict with the 93 class members who have filed a DLI claim, because certification of a class would deprive the DLI claimants of the administrative forum they have chosen to pursue their wage claim.

No legal analysis is offered in support of this assertion. State law authorizes employees to file a wage complaint with Labor & Industries regarding any wage violations that occurred within the past three years. RCW 49.48.083(1). The filing of an administrative complaint tolls the statute of limitation and, if DLI assesses wages and interest against the employer and the employee accepts payment, the employee is barred from pursuing relief in court for that violation. RCW 49.48.083(4) and (5). The Court has not found, and defendants have not identified, any provision that would automatically terminate a pending administrative investigation upon the filing of a lawsuit. Although the statute specifically authorizes employees who have filed wage complaints with the DLI to terminate the administrative action in order to

ORDER CERTIFYING CLASS - 9

pursue litigation, it expressly states that the "right of any employee to pursue any judicial administrative, or other action available with respect to an employer" is not limited or affected. RCW 49.48.085(1) and (3).

Defendants also argue that the named plaintiffs, who are bound by the Court's dismissal of their claims against GCA Services, have a conflict with the absent class members because they are not so bound. Neither plaintiffs nor their counsel became "inadequate" simply because they have not been successful on all claims. Defendants offer no authority that supports this extraordinary argument. Whether an absent class member files an individual wage claim against GCA Services or is represented in this litigation as part of a class, the outcome is the same: GCA Services is not subject to the Ordinance. One of the key attributes of class actions is that common factual and legal issues are resolved en masse. That aspect cannot, in and of itself, create a conflict that prevents class certification. If the absent class members were factually distinguishable from the named plaintiffs, such that their claim against GCA Services might have a chance of succeeding where the named plaintiffs' failed, this argument might have some merit. In the circumstances presented here, it does not.

Defendants argue that the named plaintiffs have credibility problems that will reduce the likelihood that the class will prevail. As discussed above, the Court has reviewed the declarations and deposition testimony. While there are undoubtedly misstatements of fact, there is no reasonable probability that they will adversely impact plaintiffs' or counsels' ability to pursue the wage claims at issue in this case.

Finally, defendants argue that plaintiffs are inadequate class representatives because they were unable to control the content of their declarations and are therefore unwilling or unable to protect the interest of the class against the competing interests of the attorneys. Defendants identify no competing interests -- real or imagined -- between the named plaintiffs and their attorneys. Contrary to defendants' bald assertions, plaintiffs' counsel are more than capable of litigating this action. They have appeared before the undersigned in eight other cases involving the SeaTac Ordinance and have extensive experience in this area. At least two of the cases have

ORDER CERTIFYING CLASS - 10

been settled: the one that required judicial review was resolved with a significant award to plaintiffs and a modest fee award for the attorneys.

The Court finds that both the named plaintiffs and plaintiffs' counsel have demonstrated a commitment to vigorously prosecuting this action on behalf of the class and will do so in an adequate manner.

**B. Maintenance of a Class under Rule 23(b)(3)**

Plaintiffs argue that the provisions of Rule 23(b)(3) apply, pursuant to which the Court is required to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

**(1) Common Issues Predominate**

The first Rule 23(b)(3) finding involves "the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id. If the named plaintiffs are able to establish their joint employer theory and liability under the Ordinance, the evidence presented will also establish defendants' liability to the absent class members.[5] The underlying questions concerning defendants' liability

---

[5] Defendants argue that the joint employment issue will require an analysis of the working conditions of each individual employee. Dkt. # 55 at 28. The economic realities test used to determine joint employment is undoubtedly fact specific and will require consideration of the relationship between GCA Services and Avis-Budget, the terms of their agreement, and the conditions under which the class members worked. The evidence in the record so far shows that the employees were considered fungible

ORDER CERTIFYING CLASS - 11

predominate over any individual issues related to the calculation of back wages for each employee.

### (2) Superiority of Class Action

The second Rule 23(b)(3) finding requires the court to evaluate alternative mechanisms of dispute resolution based on the factors listed above in Rule 23(b)(3)(A)-(D). See Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1190 (9th Cir. 2001). Defendants argue that the superior mechanism for resolving this dispute is a wage complaint before the Department of Labor & Industries, as indicated by the fact that 93 former GCA Services employees have filed such a claim. The DLI claims have been asserted against GCA Services, however, not Avis-Budget. There is no indication that L&I would entertain claims based on a joint employer theory or that such claims have been asserted. If, then, the alternative method of resolution is for the putative class members to proceed with individual claims, the Court finds the class action to be superior. "Even if efficacious, [individual] claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" given the potential litigation costs. Hanlon, 150 F.3d at 1023. Although class members may have individual claims in the thousands of dollars, that amount pales in comparison to the costs of litigation. The relative amounts suggests that each class member will not have a "significant interest in litigating his or her claims separately." Brown v. Consumer Law Associates, LLC, 283 F.R.D. 602, 615-16 (E.D. Wash. 2012) (holding that class adjudication of class members' claims was superior to separate individual actions when the claims were "relatively small," in the range of $5,000 to $10,000). Because the class members would have little interest in pursuing individual actions, the first factor weighs in favor of class action treatment.

As for existing litigation, the Court is unaware of any other litigation (or administrative action) pending against Avis-Budget for the claims plaintiffs assert. Thus, treating plaintiffs'

---

and shifted around from role to role and from on-site to off-site locations. There is no indication that the joint employer determination will have to be made on an employee by employee basis.

ORDER CERTIFYING CLASS - 12

claims as a class action appears to promote judicial economy. The third factor, desirability of concentrating the litigation in a particular forum, weighs in favor of class action treatment because it is likely that many, if not all, of the defendant's former employees are residents of King County. The Western District is therefore "an entirely logical place for the case to proceed." Brown, 283 F.R.D. at 616. The fourth factor, difficulties in managing the class action, also supports class action treatment, because it is likely that managing this single class action will require fewer judicial resources than managing separate suits.[6]

## C. "Failsafe" Class

Defendants correctly noted that plaintiffs' initial class definition failed to set forth characteristics that could be identified at the outset of the litigation and instead required adjudication of the joint employer issue before one would know whether he or she was a class member. Such classes are unfair to defendants because they allow putative class members to seek relief in court without being bound by an adverse judgment. In this case, if the named plaintiffs are able to establish a joint employment relationship, the putative class members become class members and enjoy the victory. If, however, the named plaintiffs are unsuccessful, the putative class members are not "employees of GCA [Services] jointly employed by Avis-Budget" and would not, therefore, be bound by the decision.

In reply, plaintiffs rewrote the class definition to take away the offending legal contingency. Instead of defining the class as "employees of GCA [Services] jointly employed by Avis-Budget" (which would require a determination of joint employment before class members could be identified), plaintiffs defined the class by reference to GCA Services' contract with Avis-Budget. Under the revised class definition, if you were an employee of GCA Services who worked as part of the contract between GCA Services and Avis-Budget, you are a class member. These are existing, objective criteria that avoid the fail-safe problem defendants identified without changing the nature or intent of the class definition. The Court accepts the amended

---

[6] Plaintiffs have not shown that certification under Fed. R. Civ. P. 23(b)(2) is appropriate.

ORDER CERTIFYING CLASS - 13

definition.

**D. Appointing Class Counsel**

Pursuant to Fed. R. Civ. P. 23(g)(1), plaintiffs' counsel is hereby designated as counsel for the class subject to further order of the court.

### III. Conclusion

For all of the foregoing reasons, it is hereby ORDERED that the following class is certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All employees of GCA Services who have been either Hospitality Workers or Transportation Workers and who worked one or more hours in the City of SeaTac as part of GCA Services' contract to provide labor services to Avis-Budget at any time during the time period between January 1, 2014, to March 31, 2016, who were paid less than the prevailing minimum wage prescribed by City of SeaTac Ordinance 7.45.050, and who have not released fully their claims arising under that statute.

Abdikhadar Jama, Aneb Abdino Hirey, Rogiya Digale, Abdisalam Mohamed, Jashir Grewal, Udham Singh, Sukdev Singh Basra, Khalif Mahamad, Jama Diria, Ahmed F. Gelle, and Lul Salad are appointed representatives of the class. Plaintiffs' counsel is designated as counsel for the class.

Dated this 20th day of October, 2017.

Robert S. Lasnik
United States District Judge

ORDER CERTIFYING CLASS - 14